## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## Civil Case No. 1:10-cv-00130-MR
## [Criminal Case No. 1:08-cr-00129-MR-1]

| | | |
|---|---|---|
| **RICKY NELSON WALKER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**THIS MATTER** comes before the Court on the Petitioner's Motion to Vacate, Set Aside or Correct Sentence, filed pursuant to 28 U.S.C. § 2255 [Doc. 1] and the Respondent's Motion for Summary Judgment [Doc. 9] on the claims raised by Petitioner, as well as two motions to amend filed by Petitioner [Docs. 13 & 14]. For the reasons that follow, Respondent's motion will be granted, and Petitioner's Section 2255 motion, as amended, will be denied and dismissed.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On December 3, 2008, Petitioner was charged in a one-count Bill of Indictment with knowingly possessing with intent to distribute cocaine base in an amount exceeding five grams, in violation of 21 U.S.C. § 841(a)(1).

[Criminal Case No. 1:08-cr-00129, Doc. 1: Indictment]. On February 17, 2009, Petitioner, with assistance of counsel, entered into a plea agreement with the Government. [Doc. 12].

The plea agreement informed Petitioner that pursuant to the statute he faced a sentence of not less than 5 years and not more than 40 years' imprisonment, unless he had previously been convicted of a felony drug offense, in which case Petitioner faced not less than 10 years and not more than life imprisonment. [Id. at ¶ 3]. The agreement provided that despite any recommendations made therein, if the U.S. Probation Office determined that Petitioner qualified as a Career Offender within the meaning of USSG § 4B1.1., then that provision of the guidelines could be used to calculate his sentence of imprisonment. [Id. at ¶ 6(d)].

The plea agreement also contained important waiver provisions relating to Petitioner's ability to appeal his sentence or otherwise challenge it on collateral review:

> Defendant, in exchange for the concessions made by the United States in this plea agreement, waives all such rights to contest the conviction and/or the sentence except for: (1) claims of ineffective assistance of counsel and/or (2) prosecutorial misconduct.

[Id. at ¶ 19].

On April 23, 2009, Petitioner appeared with appointed counsel to plead guilty to the one count contained in the Bill of Indictment. At his Rule 11 hearing, Petitioner was placed under oath and the Court carefully explained the elements of the charge, including the minimum and maximum penalties upon conviction. Petitioner was further advised of his rights to elect to plead not guilty and proceed to trial, at which the Government would have the burden of proving each element of the charged offense before a jury and beyond a reasonable doubt and Petitioner would have the right to put on a defense, including calling witnesses and confronting the Government's witnesses.

Petitioner confirmed that his plea was voluntary and not the result of any coercion, threats, or promises in any way; that he had met with his defense attorney; that he understood how the sentencing guidelines might apply to him; that he had ample time to discuss any possible defenses to the charges with his counsel; and that he was entirely satisfied with the services of his attorney. Petitioner confirmed that he was knowingly waiving his right to appeal his conviction or sentence or to prosecute any post-conviction proceeding except on the grounds of ineffective assistance of counsel or prosecutorial misconduct. The Court's questions, along with Petitioner's answers thereto, were recorded and presented to Petitioner in

writing to review. Petitioner reviewed the document in open court and signed it. Thereafter, the Court accepted Petitioner's guilty plea. [Id., Doc. 13: Acceptance and Entry of Guilty Plea].

In advance of Petitioner's sentencing hearing, the U.S. Probation Office prepared a presentence report ("PSR"). In the PSR, the probation officer identified the following prior State convictions sustained by Petitioner in North Carolina: (1) felony sell and deliver marijuana; (2) felony possession with intent to sell and delivery marijuana; and (3) conspiracy to possess with intent to distribute crack cocaine and distribute cocaine base. [Id., Doc. 16: PSR at ¶¶ 26, 38 & 41]. Based on these State convictions, the probation officer concluded that Petitioner qualified as a Career Offender under U.S.S.G. § 4B1.1 because he was over the age of 18 at the time he committed the federal offense charged in his Indictment and he had two or more prior controlled substance convictions. Petitioner's counsel filed an objection to this determination contending (1) that Petitioner's convictions for the sale and delivery of marijuana, which were sustained in 1993, were too remote in time to constitute applicable conduct to support the career offender designation, and (2) that one of these offenses involved less than five grams of marijuana and thus was "not a felonious transfer." [Id., Doc. 15]. Despite this objection, the probation officer recommended

4

that the career offender designation stand. The probation officer found a total offense level of 31 for Petitioner and a criminal history category of Level VI based on 14 criminal history points. The result was a guideline range of 188-235 months' imprisonment. [Id., Doc. 16: PSR at ¶ 102].

On June 19, 2009, Petitioner appeared with counsel for his sentencing hearing. Petitioner's counsel reiterated the substance of his written objections to the career offender designation but the Court overruled them, concluding that the designation was correct. The Court granted the Government's 5K1.1 motion for a departure based on substantial assistance with the Government's investigation and the Court found this reduced Petitioner's total offense level to 29, thereby reducing Petitioner's guideline range to 151-188 months. [Id., Doc. 32: Sentencing Tr. at 13]. The Court sentenced Petitioner to 151 months' imprisonment. Petitioner noted a timely appeal, which was later dismissed on Petitioner's motion pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure.[1] United States v. Walker, No. 09-4609 (4th Cir. Sept. 21, 2009). [Doc. 35].

In the present Section 2255 motion, Petitioner raises five grounds of ineffective assistance of counsel, and one claim that he should be

---

[1] The Honorable Lacy H. Thornburg presided over Petitioner's sentencing hearing. This case was reassigned to the undersigned upon Judge Thornburg's retirement.

resentenced pursuant to the Fair Sentencing Act of 2010 ("FSA").[2]  In his first three grounds the Petitioner argues that his trial counsel was ineffective in failing to adequately challenge Petitioner's designation as a career offender.  In his fourth ground for relief, Petitioner challenges his trial counsel's performance in negotiating a plea agreement with the Government.  In his fifth ground for relief, Petitioner contends that his trial counsel was ineffective in failing to file a motion to suppress evidence of currency Petitioner had in his possession when he was arrested for the offense charged in the Indictment.

After the Government filed its motion for summary judgment, Petitioner filed two motions to amend his § 2255 motion. In the first motion, Petitioner renews his argument that his trial counsel was ineffective during the course of plea negotiations in failing to act quickly enough to discuss his case with the Government prior to his indictment.  [Doc. 13].  In the second motion, Petitioner again attacks his designation as a career offender, this time citing the decision of the Fourth Circuit Court of Appeals in United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc).  [Doc. 14].  Petitioner's arguments, as presented in his originally filed § 2255 motion and through his motions to amend, will be addressed in turn below.

---

[2] The Court allowed Petitioner's motion to amend his § 2255 motion to include the FSA claim. [Doc. No. 3, 4].

## II.    STANDARD OF REVIEW

### A.    Section 2255 Proceeding

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. The Court has considered the record in this matter and applicable authority and concludes that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### B.    Summary Judgment

Summary judgment is appropriate in cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to judgment as a matter of law. United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991) (applying summary judgment to motion to vacate). Any permissible inferences which are drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a trier of fact

to find for the non-moving party, granting summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

## III.  DISCUSSION

Petitioner's claims in this collateral proceeding rely largely upon his contention that his trial counsel provided ineffective representation, and that such deficient representation prejudiced Petitioner's defense.

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense."  Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 104 S.Ct. 2052.  A petitioner seeking post-conviction relief bears a "heavy burden" to overcome this presumption.  Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983).  Conclusory allegations do not overcome the presumption of competency.  Id.

To demonstrate prejudice in the context of a guilty plea, Petitioner must still satisfy the standard set forth in Strickland.  In regard to the second prong, Petitioner must demonstrate that he was prejudiced by

ineffective assistance of counsel by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Under these circumstances, Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

## A. Career Offender Designation (Grounds 1-3)

In his first three grounds, Petitioner contends that his trial counsel provided deficient representation under Strickland by failing to make a proper challenge to Petitioner's designation as a career offender.

As noted above, after receipt of the PSR, Petitioner's trial counsel filed a written objection challenging the use of state drug convictions from 1993 as being too remote in time to support a finding that Petitioner was a career offender.[3]  Petitioner contends his trial counsel should have argued that Petitioner did not qualify as a career offender because he did not actually serve active time on the 1993 convictions.  Petitioner raises this same claim regarding activation of his state sentence throughout Grounds 1-3 and therefore these grounds will be addressed together.

A petitioner is a career offender if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1 (2008).  There is no question that Petitioner's conviction in the instant case is a felony controlled substance offense to which the career offender designation would apply or that Petitioner was 18 years old at the time he committed the offense.  Petitioner focuses his argument on

---

[3] Petitioner's trial counsel's arguments regarding the age of his state convictions was filed as a written objection to the PSR and argued during his sentencing hearing. The Court overruled the objection and found the state convictions qualified under the career offender provision. To the extent Petitioner recasts the argument regarding the timeliness of his state convictions under the guise of an ineffective assistance of counsel claim, the argument is overruled.

the third element, that is, whether he has the necessary prior controlled substance offenses to support the career offender designation.  As will be discussed below, Petitioner contends that because he never served active time on these prior state controlled substance offenses, he has only one prior controlled substance offense, that being the federal conviction for possession with intent to distribute crack cocaine from 1995 [see 1:08-cr-00129, PSR § 41], and thus did not qualify for the career offender designation.

According to his PSR, Petitioner was convicted on June 28, 1993, in North Carolina state court on one felony count of the sale and delivery of marijuana; one count of felony possession with intent to sell and deliver marijuana; and one count of felony simple possession of cocaine. The state court consolidated the convictions and sentenced Petitioner to a five-year term of imprisonment, to be suspended, and a five-year term of supervised probation.  [Id. at ¶¶ 38-39].

The PSR also indicates that on August 23, 1995, Petitioner was convicted in federal court in this District on one count of conspiracy to possess with intent to distribute crack cocaine, and that he was sentenced to 48 months of imprisonment. Petitioner was not immediately remanded to

the custody of the United States Marshal but rather was allowed to report when notified by the Federal Bureau of Prisons ("BOP").  [Id. at ¶ 41].

On September 1, 1995, prior to reporting to the BOP to serve his federal sentence, Petitioner appeared before the state court and his probation was revoked on the state marijuana convictions and the state cocaine conviction.  The five-year term for the marijuana convictions was ordered to run consecutively to the state cocaine conviction for a total term of ten years' imprisonment.  [Id. at ¶¶ 38-39].  The state court ordered Petitioner to report to the Transylvania County jail on December 15, 1995 to begin serving his consecutive state sentences.  In the meantime, the state court ordered the Petitioner to report to his probation officer as requested by the officer and submit to drug screens. The court made it clear that if Petitioner failed one drug screen between September 1st and December 15th, he was to be taken immediately into custody by the probation officer to begin serving his state sentence.  [See Doc. 1-1 at 2-3: State Judgment and Commitment upon Revocation of Probation ("State Judgment")].

On November 29, 1995, before Petitioner could report to begin serving his active state sentence, he was ordered to self-report to the BOP

to begin serving his federal sentence. [See Crim. Case No. 1:95-cr-00013, Doc. 65].

Petitioner erroneously contends that the state court did not revoke his probation and impose two consecutive five-year terms for the convictions identified in Paragraphs 38 and 39 of his PSR. The State Judgment, however, which Petitioner attached to his § 2255 motion, makes plain that his probation was indeed revoked, and that subject to specific conditions, he was allowed to self-report on December 15, 1995, to begin serving his active, consecutive five-year sentences. Petitioner's argument that the state sentences do not support a career offender designation on the basis that he was continued on probation is simply belied by the record and therefor will be denied.

Petitioner's argument ultimately rests on the fact that he did not actually serve any time in state prison following the revocation of his probation and activation of his sentences on September 1, 1995. According to Petitioner, because he did not actually serve any time on the state convictions, he is not properly designated as a career offender. Thus, Petitioner seeks to benefit from the fact that the BOP ordered him to report and begin serving his federal sentence before he could dutifully report to state authorities to begin serving the state sentences.

The Government responds that Petitioner's arguments regarding his career offender status are without merit. The Government notes that Petitioner served his sentence in Case No. 1:95-cr-00013, but upon release he did not report to state authorities to begin serving his previously-imposed state sentence. The Government observes that "Petitioner basically 'fell through the cracks' with the regard to the state Department of Correction and its execution of Judge Bridges' sentence. Since there is no statute of limitations as to a validly-imposed sentence of incarceration, however, the fact of the matter is that Petitioner, to this day, is still subject to that 10-year state sentence." [Doc. 8 at 16].

Indeed, it is unknown why the state did not file a detainer with the BOP once Petitioner began serving his federal sentence for the 1995 conviction, or what, if any, efforts the state has made to ensure that the criminal judgment is carried out. The record before this Court makes plain, however, that Petitioner did not appeal his state sentence and he still appears bound to serve it.[4]

The question before this Court is this: Does a conviction for which an active prison sentence was imposed, which sentence the defendant manages to evade serving, count as a qualifying conviction for purposes of

_____

[4] Indeed, the Government has indicated that it intends to notify the appropriate State authorities of this fact so that they may file a detainer with the BOP.

determining one's status as a career offender?  The Government contends that it does.  Under the Guidelines, a "sentence of imprisonment" is defined as "a sentence of incarceration and refers to the maximum sentence imposed."  U.S.S.G. § 4A1.2(b)(1) (2008). Application Note 2 provides that for a sentence to "qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence (or, if the defendant escaped, would have served time)."  U.S.S.G. § 4A1.2, App. n.2.

Courts have interpreted a "sentence of imprisonment" in the present unusual context, that is, where a state judgment of active imprisonment was entered prior to a petitioner's federal sentencing, but the execution of the active sentence had not yet been carried out.  For example, in United States v. Thompson, 925 F.2d 234 (8th Cir. 1991), the Court considered the situation of a defendant who had been convicted and sentenced in state court in Arkansas to a three-year active term of imprisonment. The defendant's sentence was affirmed on appeal but "[f]or some inexplicable reason, [he] was never picked up by the Arkansas authorities, and consequently, he never served a single day of his state conviction."  Id. at 235.  In his federal proceeding, the district court assessed the defendant with three criminal history points for this state conviction and sentence,

even though the defendant had never served active time.  The defendant challenged this imposition of three points on appeal. In rejecting this argument, the Court found that the defendant's state sentence "was not suspended, either in imposition or execution.  The State of Arkansas took no affirmative steps to relieve [defendant] of his obligation to serve [active time] in prison. Through inadvertence -- or perhaps negligence -- the State simply failed to pick him up.  Although [defendant]'s status is not that of an escaped prisoner, neither does he rise to the level of one whose sentence was affirmatively suspended." <u>Id.</u>  In affirming the district court's imposition of the three points, the Eighth Circuit observed that "[a]bsent some type of affirmative conduct by the state relieving [defendant] of his penal obligation, this Court must affirm the three criminal history points assessed against him for a past 'sentence of imprisonment.'" <u>Id.</u> at 235-36.  <u>See also</u> <u>United States v. Rayborn</u>, 957 F.2d 841, 844 (11th Cir. 1992) (citing <u>United States v. Martinez</u>, 931 F.2d 851, 852 (11th Cir. 1991)) (holding that district court properly added criminal history points where defendant had been sentenced on a previous conviction, but had yet to begin serving the sentence at the time of his federal sentencing); <u>United States v. Walker</u>, 912 F.2d 1365, 1366 (11th Cir. 1990) (same findings).

The argument Petitioner proffers with without merit. The conviction at issue was properly counted. As such, Petitioner's argument that counsel's performance was deficient is likewise without merit. Ineffective assistance of counsel cannot consist of having failed to make an argument that is legally incorrect. Petitioner cannot demonstrate that he was prejudiced by his trial counsel's failure to pursue this line of attack on his prior state sentences because the sentences were activated and Petitioner, to this day, appears obligated to serve the consecutive sentences. Petitioner's Grounds 1-3 will be denied.

## B. Trial Counsel's Failure during Plea Negotiations (Ground Four)

Petitioner contends that counsel provided deficient representation under Strickland in failing to pursue aggressively negotiations with the Government after Petitioner was issued a target investigation letter by the United States Attorney. [Doc. 1 at 9-10]. Petitioner offers no evidence which can reasonably support this claim. The record makes plain that his trial counsel moved quickly to contact the United States Attorney's Office after being appointed to represent him. Petitioner vaguely contends that his counsel's delay in pursuing negotiations "possibly caused me to miss the opportunity to receive a 5K.3 for participating in the early disposition program," and counsel's earlier engagement with the Government may

have "possibly avoided the 851 information that was filed." [Id. at 9]. Finally, Petitioner contends that his counsel was ineffective in failing to fully inform him of the right to appeal, as provided for in 18 U.S.C. § 3742, which Petitioner later waived through the execution of his plea agreement with the Government. The result, as Petitioner argues, is that his decision to plead guilty was not knowing and voluntary.

In regard to Petitioner's arguments concerning possible assistance under Section 5K3 of the Guidelines, this argument is without merit. The Guidelines recommend that a district court "may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides." U.S.S.G. § 5K3.1 (2008). Petitioner's counsel responds to this claim of ineffective assistance of counsel by noting that he was aware of no such authorized program in this District when Petitioner was sentenced. The Government confirms that no early disposition program was in place. [Doc. 8]. Therefore, counsel could not have been ineffective in failing to secure Petitioner sentencing relief under a program which was nonexistent in this District.

Next, Petitioner contends his counsel was ineffective in failing to act quickly in his negotiation with the United States Attorney's Office, and that

such inexcusable delay may have "possibly caused" the filing of an information pursuant to 21 U.S.C. § 851. This argument distorts the record and calls for pure speculation.

In his affidavit, Petitioner's trial counsel acknowledges that Petitioner received a target letter from the United States Attorney before he had been appointed to represent the Petitioner. Counsel avers that following his assignment he began to place telephone calls to the United States Attorney assigned to the case in order to "commence negotiations," but that such negotiations were "substantially delayed due to scheduling issues with the U.S. Attorney and the Drug Enforcement Administration." [Doc. 8-1 at 1: Keller Aff. at ¶¶ 1-2]. Counsel notes that Petitioner was eventually indicted for the controlled substance offense before he could be interviewed by the United States Attorney or the DEA; however, the U.S. Attorney assured Petitioner's counsel that he "would get full credit for early and substantial assistance." [Id. at ¶ 3].

The record supports these averments. First, although Petitioner had two prior, qualifying drug offenses, he was noticed with only one of these prior offenses by the Government in its § 851 notice, that being, the federal conviction in 1995. [Criminal Case No. 1:08-cr-00129, Doc. 11: Section 851 Notice]. Second, Petitioner's counsel did in fact secure Petitioner

credit for substantial assistance in the plea agreement under U.S.S.G. § 5K1.1, and the Government later filed a motion pursuant to that section for downward departure which was granted by the Court. Last, the Government notes that Petitioner's argument that his counsel failed to act quickly enough to stave off the filing of a § 851 notice "is nothing more than rank speculation that the Government, contrary to his usual practice, might not have filed such a notice in Petitioner's case." [Doc. 8 at 22].

In his final argument in this section, Petitioner contends that his decision to enter into the plea agreement was not knowing and voluntary because his counsel failed to adequately explain critical rights Petitioner was waiving, in particular, Petitioner's agreement to waive his right to appeal his sentence under 18 U.S.C. § 3742. [See Crim. Case No. 1:08-cr-00129, Doc. 12: Plea Agreement at ¶ 19].  Petitioner's sworn statements during his Rule 11 plea colloquy and his signature on his Rule 11 Acceptance and Entry of Guilty Plea belie this assertion.  See United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005) ("Thus, in the absence of extraordinary circumstances the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily reliefs on allegations that contradict the sworn statements.

Otherwise, a primary virtue of Rule 11 colloquies would be eliminated . . .") (internal citations omitted). A review of the Rule 11 hearing and Petitioner's signed acceptance of the entry of his guilty plea leads to the unavoidable conclusion that Petitioner's decision to plead guilty was knowing and voluntary. See, e.g., [Crim. Case No. 1:08-cr-00129, Doc. 13: Acceptance and Entry of Guilty Plea at ¶ 34 (Petitioner affirming that he discussed with counsel his right to appeal his sentence and that he was waiving such a right); Doc. 31: Tr. of Rule 11 Hearing at 16 (explaining Petitioner's agreement to waive his right to appeal his sentence)].

It is Petitioner's burden to demonstrate ineffectiveness and prejudice under Strickland. Based on the negotiated plea agreement, Petitioner's knowing and voluntary entry of his plea agreement in open court, and the valuable sentencing relief secured by Petitioner's counsel, the Court finds the foregoing arguments are without merit and will be denied.

### C.    Trial Counsel's Failure to Move to Suppress (Ground Five)

Here, Petitioner argues that his counsel was ineffective in failing to move to suppress certain currency which was discovered following Petitioner's arrest for the offense of possession with intent to distribute crack cocaine.  [Doc. 1 at 11].  Petitioner contends that he was prejudiced by this failure because "no jury would have been able to find me guilty

beyond a reasonable doubt. My drugs were for personal use only." [Id. at 10-11]. This argument is without merit.

During his sentencing hearing, Petitioner stipulated that the PSR (subject to objections not relevant here) supported a factual basis for the entry of his guilty plea. The PSR indicates that on May 7, 2008, law enforcement received information from a confidential source that Petitioner was observed delivering crack cocaine to a residence in Brevard, North Carolina. Law enforcement encountered Petitioner at this residence during their subsequent investigation. Petitioner then fled on foot while discarding a small plastic bag which was recovered and later found to contain 5.9 grams of crack cocaine. In addition, officers recovered $3,470 in United States currency on Petitioner's person. [Crim. Case No. 1:08-cr-00129, PSR at ¶¶ 9-10]. Petitioner was arrested on that date, and subsequently indicted. He pled guilty in this Court to possession of crack cocaine with the intent to distribute an amount in excess of five grams. That Petitioner was found in possession of over three thousand dollars in cash is of no relevance to his ultimate decision to plead guilty to possession with intent

to distribute crack cocaine as possession of this currency was not an element of Count One in his indictment.[5]

As Petitioner's trial counsel explains [Doc. 8-1], the money recovered from Petitioner was pursuant to a lawful arrest for the possession of crack cocaine and any motion to suppress evidence of the recovery of this money would have been frivolous.  It is well-settled that trial counsel cannot be ineffective in choosing not to file frivolous motions.  This argument will be overruled.

### D.    Resentencing under the FSA

Petitioner contends that he is entitled to be resentenced under the provisions of the FSA, which were made effective on August 3, 2010.  [Doc. 3].[6]  Petitioner was sentenced on June 19, 2009, and his judgment was entered on June 29, 2009.  [Crim. Case No. 1:08-cr-00129, Doc. 19].

In <u>Dorsey v. United States</u>, 132 S.Ct. 2321 (2012), the Supreme Court held that the FSA applies to sentencing proceedings that take place after the effective date of the FSA.  Petitioner was sentenced in June 2009,

---

[5] Petitioner's contention that he was lawfully in possession of the money because it was obtained through a settlement of an insurance claim is irrelevant.  The amount of crack cocaine which Petitioner acknowledged possessing was all that was needed to support his federal indictment.

[6] The FSA raised the amount of crack cocaine necessary to establish certain mandatory-minimum sentences, and abolished certain mandatory minimums in their entirety. <u>Dorsey</u>, 132 S.Ct. at 2329-2331.

some thirteen months before the effective date of the FSA, and Petitioner's direct appeal was dismissed on September 18, 2009; thus, his judgment was final in September 2009, long before the FSA became effective. See Dorsey, 132 S.Ct. at 2335 ("[A]s a whole, we conclude that Congress intended the Fair Sentencing Act's new, lower mandatory minimums to apply to the post-Act sentencing of pre-Act offenders."). This argument will therefore be denied.

### E.   Motion to Amend

Petitioner filed two motions to amend his Section 2255 petition after the Government filed its response and motion for summary judgment. In the first motion to amend, filed almost one year after Petitioner filed his original § 2255 motion, Petitioner renews his attack on his trial counsel's performance prior to his Indictment, and he attaches a copy of the target letter that the United States Attorney's Office sent to him prior to the appointment of counsel and prior to his Indictment. [Doc. 13].

As the Court has already concluded herein, the record demonstrates that Petitioner's counsel responded swiftly following his appointment by contacting the United States Attorney in an effort to commence negotiations of Petitioner's behalf. What followed was the plea agreement with the Government which secured the filing of notice of only one of

Petitioner's convictions under § 851, and the ultimate filing of a substantial assistance motion for departure under § 5K1.1, which the Court granted.

The first motion to amend will be allowed as it merely supplements the same argument regarding effort of Petitioner's trial counsel to engage in early plea negotiations as presented in the fourth ground for relief in Petitioner's § 2255 motion. For the reasons stated herein, however, the amended ground for relief will be denied as unsupported by the record.

In his second motion to amend, Petitioner contends that he no longer qualifies as a career offender based on the Fourth Circuit's opinion in United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc). [Doc. 14]. Specifically, Petitioner argues that his 1993 state conviction for possession with intent to sell five grams or less of marijuana did not subject him to a sentence in excess of one year imprisonment, and therefore it does not qualify as a predicate offense to support his career offender designation. Again, the Court finds that this argument is related to the "same core facts" which Petitioner presses in his challenge to his status as a career offender, namely, his claim that he was not sentenced to an active term of incarceration in excess of one year on the marijuana conviction. The motion to amend will therefore be allowed to the extent that he renews

previously presented arguments regarding the length of the active sentence for his 1993 conviction.

Petitioner's 1993 marijuana conviction was meted out under the provisions of the Fair Sentencing Act which applied to controlled substance offenses committed in North Carolina on or before October 1, 1994. See United States v. Montford, 458 F. App'x 300, 301-302 (4th Cir. 2011) (unpublished). Petitioner was sentenced on the marijuana conviction on June 28, 1993, to a term of five years' imprisonment. This sentence was suspended but later activated following his probation revocation hearing on September 1, 1995, as discussed herein. Thus, based on this record, Petitioner was indeed sentenced for his marijuana distribution conviction to a term exceeding one year imprisonment. [See Crim. Case No. 1:08-cr-00129, Doc. 16: PSR at ¶ 38]. Accordingly, the Court finds that Petitioner is not entitled to relief and this claim will be denied.

To the extent Petitioner seeks to rely on the decision in Simmons, the motion to amend will be denied. The Court in Simmons construed a defendant's conviction under North Carolina's Structured Sentencing Act, which became effective for offenses committed on or after October 1, 1994, and this sentencing scheme wholly replaced North Carolina's Fair Sentencing Act. As noted, Petitioner was sentenced prior to the enactment

of North Carolina's Structured Sentencing Act and therefore the decision in Simmons can be of no assistance to Petitioner in his challenge to his career offender designation.[7]

## IV.    CONCLUSION

Based on the foregoing, the Court finds that Petitioner's § 2255 motion, as amended, is without merit and it will be denied and dismissed.

Further, pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial

---

[7] Even if the Court were to consider this argument under Simmons it would avail the Petitioner nothing.  In Simmons the Court of Appeals addressed the question of how to calculate whether an offense is punishable by imprisonment for longer than one year. The salient question, even after Simmons, is what sentence a given defendant can *potentially* receive.  Petitioner, upon his 1993 conviction, was sentenced to five years imprisonment.  One need not explore what potential sentences were available. Petitioner was *actually* sentenced to a term in excess of one year.  Hence, Petitioner's argument is without merit.

of a constitutional right).

## ORDER

**IT IS, THEREFORE, ORDERED** that Petitioner's motion to amend his § 2255 motion [Doc. 13] is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner's second motion to amend his § 2255 motion [Doc. 14] is **GRANTED IN PART** and **DENIED IN PART** for the reasons stated herein.

**IT IS FURTHER ORDERED** that Respondent's Motion for Summary Judgment [Doc. 9] is **GRANTED**, and Petitioner's Section 2255 motion [Doc. 1], as amended, is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: September 3, 2013

Martin Reidinger
United States District Judge